## WALDRON BROS. v. DICKERSON ET AL.

1. **Lien:** RECOGNIZANCE FOR STAY OF EXECUTION: FAILURE TO RECORD. Sections 3293–3298 of the Revision, relating to stay of execution, provide that the surety may be taken and approved by the clerk and the recognizance entered of record, and that every recognizance so taken shall have the effect of a judgment confessed against the property of the sureties. Where a stay bond, executed and filed with the clerk, was lost and no entry thereof made upon the records of the court, *held*, that it did not become a lien upon the property of the surety as against subsequent incumbrancers without actual notice.

2. ——: ——: ——. A decree of the court afterward entered upon a showing of the fact of the filing of the bond, and declaring the recognizance to be a lien upon the property of the surety from the time of such filing, would not conclude the holders of incumbrances taken prior to such decree who were not parties to the proceeding.

*Appeal from Polk District Court.*

SATURDAY, OCTOBER 25.

ACTION to foreclose a mortgage executed by defendant, William Dickerson. Other parties holding liens upon the land were made defendants. Of these S. D. Chillson and the Iowa Loan and Trust Company, whose claims or liens were by the decree declared to be inferior to the liens of their co-defendants, now appeal. The facts of the case appear in the opinion.

*Brown & Dudley*, for appellants.

*M. D. McHenry*, for appellees.

BECK, CH. J.—I. The cause was sent to a referee, who found the facts, so far as they are involved in the questions of law arising in the case, to be as follows:

1. July 27, 1875, the defendant Dickerson executed to plaintiffs the mortgage in suit. It was recorded the day of its execution.

2. May 1, 1875, Dickerson executed to defendant Chillson another mortgage on the same lands. The mortgage was recorded May 15, 1875.

3. The Iowa Loan and Trust Company, having guarantied the payment of the notes secured by the second mortgage, paid a part of them upon default of payment by Dickerson. It thus became the holder of a part of the claim secured by that mortgage.

4. Defendant Harger recovered a judgment against Dickerson March 19, 1875, upon which the lands covered by the mortgages above mentioned were sold. The Iowa Loan and Trust Company became assignee of the sheriff's certificate and received a sheriff's deed for the lands.

5. The Peoria Marine and Fire Ins. Co. recovered two judgments against Matthew L. Dickerson on the 11th of December, 1869. Appeals were prosecuted to the Supreme Court from these judgments and each was thereon affirmed. Defendant Brotherson is the assignee of those judgments. The further findings of the referee we will present in the language of his report, as follows:

"10. That on the 18th day of January, A. D. 1870, the said William Dickerson entered into a bond before the clerk of the Supreme Court in the usual form of a recognizance, for the purpose of staying the issue of an execution upon both of the said judgments last named. That the bonds were filed by the clerk of the Supreme Court in his office; that there was no entry made thereof upon the record, no minute or memorandum made of the taking or filing of said bond, upon any record or book in the office of the clerk; that the said L. D. Chillson and the said Waldron Bros. had no actual notice or knowledge, at the time these said mortgages were taken, of the fact that said stay bonds had been filed, nor did they have any actual knowledge that they had ever existed; that the said defendant David Harger was also a purchaser without such knowledge.

"11. That at the June term, 1876, of the Supreme Court of the State of Iowa, in a proceeding then had before said Court in the matter of the judgments aforesaid, against M. L. Dickerson, and now owned by said Brotherson as aforesaid, on a motion made in said court by the said Brotherson, for a rule upon the defendant William Dickerson, to show cause why

such execution should not issue upon the said two judgments against him and his property as surety in the stay bonds aforesaid, the said court entered up and rendered their judgment in the said proceeding, in which judgment is recited the loss of said bonds. In said judgment it is also recited that said bonds had the force and effect of a judgment against said William Dickerson and his property, from the 18th day of January, 1870, and so continued to be.

"In said judgment it is also recited, as the finding of the Court, 'that on the 18th day of January, 1870, the said William Dickerson entered into a bond before the clerk of this Court in due form, as a recognizance, for the purpose of staying execution in said case as the law requires, and that said bond was filed of record by the clerk of this court, etc., and it is found by the referee to be a fact that said Dickerson executed said bonds, and that they were taken by the clerk of the Supreme Court for the purpose of staying said executions, and that said bonds remained in his office until the month of April, 1871, when they were lost, and have not since been found.'"

The referee, as a conclusion of law, found and settled the priority of the liens and claims of the parties in the following order:

1. The claim of the Iowa Loan and Trust Company under the judgment rendered in favor of Harger.

2. The lien under the mortgage executed to Chillson.

3. The lien of plaintiffs, Waldron Bros.

4. As to the claim of Brotherson the referee reported the following conclusion of law:

"4. In regard to the claim of P. R. K. Brotherson, I find that the stay bonds or recognizances for stay of executions, in the cases named, were from the date of their filing, to-wit: January 18, 1870, equitable liens upon the real estate of the defendant William Dickerson, and effective as against him and all other persons having actual notice thereof, but void as against purchasers and mortgagees for valuable consideration, and without notice; that said bonds were not entered of record so as to be operative, as complete and absolute judgments

as by confession, and wherefore I hold that the mortgage liens of Waldron Bros., and of Laurenda D. Chillson, and the title of the Iowa Loan and Trust Company, are superior to the equitable lien of the said stay bonds, and should prevail against the same."

Brotherson excepted to the conclusion of the referee and the court thereupon sustained the exception and entered a decree accordingly providing that his claim shall be paramount to the claims and liens of each and all the other parties. From the decree, on account of this provision, the Iowa Loan and Trust Company and Chillson appeal.

II. The questions for our determination relate to the legal effect of the stay bonds executed by Dickerson and require us to decide whether these bonds, upon the facts found by the referee, were liens upon the lands of Dickerson from the date of the filing, as against the defendants, who had no actual notice thereof.

*1. LIEN: recognizance: failure to record.*

The statutes applicable to the case which we are required to construe are found in the Revision of 1860; they are as follows:

"Sec. 3293. When judgment has been rendered against anyone for the recovery of money, he may, by procuring one or more sufficient freehold securities to enter into a recognizance acknowledging themselves security for the defendant for the payment of the judgment, together with the interest and costs accrued and to accrue, have a stay of the execution from time of rendering judgment, as follows:"

   *     *     *     *     *     *     *     *

"Sec. 3295. The surety for stay of execution may be taken and approved by the clerk, and the recognizance entered of record. The undertaking in the recognizance shall be for the payment of the judgment, interest and costs, that may accrue at or before the expiration of the term of the stay of execution."

"Sec. 3298. Every recognizance taken as above provided, shall have the effect of a judgment confessed, from the date thereof, against the property of the sureties."

Under these provisions the sureties for the stay of execu-

tion were required to enter into a recognizance. A recogniz-ance is an obligation entered into before a court. It was for-merly sometimes entered into orally by the surety without the execution of any writing. In such case it was made of record by proper entry of the fact upon the court roll or record. In other cases it was a written instrument and sometimes a spe-cialty. In such cases it was enrolled or entered either by copy or by statement of the fact, upon the record of the court. We think formerly, in all cases, a recognizance in some manner ap-peared upon the record of the court. More recently it often did not so appear. But little aid is derived from considering the practice of the courts relating to the instrument in the construction of the statutes before us.

Section 3295 provides that " the surety may be taken and approved by the clerk." That is, the person offering himself as surety is accepted and approved by the .clerk. The recog-nizance, whether a written instrument or an oral undertaking, is then " entered of record." The expression "entered of re-cord " is not obscure. It means the writing of the recogniz-ance upon the record of the court. The filing of a paper may make it of record, but it is not *entering* it of record. That is, a paper filed in the cause is considered a part of the record. But when we use the expression *"entered of record,"* we mean that the paper spoken of is copied into the record of the court. Section 3298 provides that "every recognizance taken as above provided shall have the effect of a judgment con-fessed," etc. The meaning of this provision is obvious. The recognizance, the obligation entered into by the surety, being accepted and adopted by the clerk has the effect prescribed. It is to be accepted and adopted as provided in section 3295. This section provides that the "surety" shall be taken and approved by the clerk and the recognizance entered of record. In taking, accepting, and adopting the recognizance the clerk is required to enter it of record. It is not taken as prescribed by the statute unless the provision is complied with. Unless so taken it has not, as against parties without notice, the effect of a judgment confessed. The recognizance in the case before

us was not entered of record; it, therefore, cannot have the effect of a judgment.

The conclusion we reach accords with the general policy of the law and with justice and equity. Liens ought not to exist upon lands unless notice thereof is imparted in the manner prescribed by law. When the law prescribes the notice its provisions must be followed. If a record in a prescribed form is required nothing less will fill the requirement. There would be no safety to the holders of titles if this rule should be disregarded.

III. It is no answer to our conclusion to urge that the omission to enter the recognizance in this case was not through the fault of the party now seeking to enforce it as a lien. The other party to this case was surely without fault. The law requires that the record shall be made: the duty thus imposed upon the clerk was neglected. Those claiming the benefit to be derived from the recognizance, and who had notice or had opportunity to know that the instrument was not recorded and could have procured compliance with the law, should rather suffer than subsequent incumbrancers and purchasers of the land who had no notice that the recognizance was executed.

IV. The judgment rendered by this court at the June term, 1876, against William Dickerson, we think, does not have the effect to preclude the appellants from denying the lien of the recognizance. They were not parties to the proceedings. Under the view of the law which we have presented, the recognizance was not a lien for the reason it was not entered of record. The judgment of this court could not have made it a lien as against parties not having notice thereof. Indeed, the judgment, as we understand it, does not attempt to do so. As to Dickerson and persons having notice of the recognizance, it was a lien upon his lands. The rights of appellants, and others not having notice thereof, were not affected by the recognizance nor by the judgment rendered thereon, in a proceeding wherein they were not parties and of which they had no notice.

We reach the conclusion that the District Court erred in sus-

taining the exceptions made by Brotherson to the report of the referee and in entering a decree declaring his claim to be the paramount lien. The order of priority of the liens and claims of the parties is correctly settled in the report of the referee.

The judgment of the District Court is reversed and the cause is remanded for a decree in accord with this opinion.

REVERSED.